IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICIA EDWARDS,<br><br>        Plaintiff,<br><br>  v.<br><br>CROSSCHECK INC.,<br><br>        Defendant. | No. C-11-00187  EDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

Plaintiff Tricia Edwards brought this action against Defendant Crosscheck, Inc. alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788, et seq., both of which prohibit debt collectors from engaging in abusive, deceptive and unfair practices. Defendant filed a motion to dismiss Plaintiff's claim under the Rosenthal Fair Debt Collection Practices Act, but does not seek to dismiss the federal claim. The Court held a hearing on Defendant's motion on July 12, 2011. For the reasons stated at the hearing and in this Order, Defendant's motion to dismiss is granted with leave to amend.

**Allegations in the complaint**

On July 27, 2010, Plaintiff purchased a car from Larry J. Mitsubishi and was told that the down payment could be paid in installments, as Plaintiff could not make a down payment in full at that time. First Am. Compl. ¶ 6. Plaintiff was told she would receive a call within forty-five days to arrange her monthly payments. Id.

On or about September 4, 2010, Plaintiff received a letter dated August 30, 2010, from Defendant regarding the down payment. First Am. Compl. ¶ 7. The letter stated in bold letters: "It

is imperative that you give this matter your utmost attention!!!!" Id. The letter also stated that Defendant Crosscheck "maintains a database of bad check writers." Id.

On or about September 10, 2010, Plaintiff called Defendant, assuming that she would be making down payment arrangements as she had been advised by the car dealer. First Am. Compl. ¶ 8. Plaintiff was transferred directly to the collection department. Id. Plaintiff was advised that she had committed check fraud and needed to get a lawyer and find out what the law was in regard to check fraud. Id. Plaintiff explained that the car dealer had advised her that the down payment could be made in installments. Id. Defendant advised her that Defendant does not do that and asked her what she did for a living. Id. Defendant's employee told Plaintiff that she had until September 13, 2010 at 5:00 p.m. to come up with the money or he was transferring her case to check investigations. Id. After speaking with Defendant, Plaintiff went to Larry J. Mitsubishi to find out why she had been initially told that the down payment would be taken in installments, if that was not the case. First Am. Compl. ¶ 9. An employee of Larry J. Mitsubishi advised Plaintiff to make a payment to Defendant via Western Union and to come back and see him afterwards. Id. Plaintiff made a $100 payment to Defendant through Western Union. Id. As she was heading back to Larry J. Mitsubishi, Defendant called Plaintiff and advised that it would not accept Plaintiff's $100 payment and that Plaintiff should go and get her money back. Id. When Plaintiff arrived back at the car dealer and advised the employee there what had happened, the Larry J. Mitsubishi employee called Defendant himself. Id. Defendant told the employee that the $100 payment would not be accepted. Id. The Larry J. Mitsubishi employee spoke to Defendant's customer service department, which said that it would accept the payment. Id. Plaintiff called Western Union and confirmed that Defendant had not sent the money back. Id.

On September 14, 2010, Defendant called Plaintiff at work and told her once again that Defendant sent the $100 back and that she had until 5:00 p.m. to come up with $1000 and Defendant would work with her on the rest. First Am. Compl. ¶ 10. Defendant called Plaintiff a liar and said that she would learn her lesson. Id. Plaintiff tried to tell Defendant that she was told that the down payment could be made in installments and that she did not intend to write a bad check. Id. Defendant told Plaintiff that she did not need to make her car payment and to send payment to

1  Defendant instead. Id. Plaintiff asked her boss for an advance on her paycheck in an attempt to
2  raise $1000 by 5:00 p.m., but she was only able to send $900 to Defendant. Id. Plaintiff was
3  advised that this was acceptable, but that she needed to come up with the rest of the money by
4  September 29, 2010. Id.

5  Plaintiff received two additional letters from Defendant, dated September 14, 2010 and
6  September 29, 2010. First Am. Compl. ¶ 11. The September 14, 2010 letter stated that Plaintiff
7  ignored Defendant's first letter, which was not the case since Plaintiff had attempted to make a $100
8  payment and had also made a $900 payment. Id.

9  In the September 29, 2010 letter, Defendant stated that the amount owed was $2024.00, the
10 same amount that Defendant was trying to collect in the previous letters. First Am. Compl. ¶ 12.
11 Defendant did not reduce the balance owed, despite Plaintiff's $900 payment. Id. The September
12 29, 2010 letter stated that Plaintiff's claim was at a "critical stage and warrants your prompt
13 attention." Id.

14 On September 29, 2010, Defendant called Plaintiff again at work and spoke to Plaintiff's
15 boss. First Am. Compl. ¶ 13. When Plaintiff's boss would not transfer Defendant's call to Plaintiff,
16 Defendant began calling Plaintiff continuously on her cell phone up until 7:00 p.m. Id.

17 On October 8, 2010, Defendant called Plaintiff's sister and left her a voicemail stating that
18 Plaintiff had committed fraud and that if she heard from Plaintiff to call them. First Am. Compl. ¶
19 14. On October 15, 2010, Defendant left a voicemail for Plaintiff informing her that they had
20 verified her employment, but failed to disclose to Plaintiff the true identity of Defendant, that the
21 call was from a debt collector, and that any and all information obtained would be used for that
22 purpose. Id.

23 **Legal Standard**

24 A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to
25 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
26 (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's
27 "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in
28 the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th

3

Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

The Rosenthal Fair Debt Collection Practices Act (RFDCPA) defines "consumer debt" as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f). A "consumer credit transaction" is defined as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family or household purposes." Cal. Civ. Code § 1788.2(e). A dishonored check is not a "consumer credit transaction," and therefore, the RFDCPA does not apply to dishonored checks. See Abels v. JBC Legal Group, 428 F. Supp. 2d 1023, 1026-27 (N.D. Cal. 2005) (citing Charles v. Lundgren & Associates, 119 F.3d 739 (9th Cir. 1997). "Implicit in Charles is a holding that a dishonored check would be excluded from the scope of the federal FDCPA by a 'credit requirement.' The California FDCPA contains a 'credit requirement,' and thus does not apply to Plaintiffs' dishonored checks." Abels, 428 F. Supp. 2d at 1026.

Here, Plaintiff's case involves a dishonored check. Plaintiff states that "she did not set out deliberately to write a bad check." First Am. Compl. ¶ 10. Plaintiff alleges that Defendant told her that it keeps a database of bad check writers, and that Defendant would transfer her case to "check

4

investigations" and that Plaintiff "had committed check fraud." Id. ¶ 7, 8. Because the basis for Plaintiff's complaint is a bad check, the RFDCPA does not apply.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff argues that the RFDCPA applies because the debt at issue is credit extended by a car dealership when the dealership offered to accept payments in installments. See First Am. Compl. ¶ 6 ("On July 27, 2010, Plaintiff purchased a car from Larry J. Mitsubishi and was told that the down payment could be paid in installments, as Plaintiff could not make a down payment in full at that time. Plaintiff was told she would receive a call within forty-five days to arrange her monthly payments."). However, Plaintiff does not deny that she wrote a check which bounced and that the collection efforts related to a bad check, as alleged in her complaint. Abels rejected a very similar argument:

> Plaintiffs assert that credit transactions are those transactions in which payment is deferred, and therefore an uncertified check such as the one at issue before the Court is a credit transaction falling within the California FDCPA credit limitation. Although recognizing the creativity of Plaintiffs' argument, this Court declines to wedge the dishonored checks at issue into Plaintiff's extrapolation of the meaning of "credit transaction" from the deferral of payment provided in California Commercial Code § 3313. The Ninth Circuit has already provided clear guidance on the effect of a "credit transaction" limitation on dishonored checks in Charles. Accordingly, Plaintiffs' claims under the California FDCPA are dismissed.

Abels, 428 F. Supp. 2d at 1026-27. Even accepting all allegations in the complaint as true, there is no plausible claim for a consumer credit transaction under the RFDCPA. Thus, Defendant's motion to dismiss the RFDPCA claim is granted. At the hearing, Plaintiff's counsel sought leave to amend the complaint, which the Court granted. Plaintiff is reminded, however, that she must have a good faith basis for doing so. Plaintiff may file an amended complaint no later than August 1, 2011.

**IT IS SO ORDERED.**

Dated: July 12, 2011

ELIZABETH D. LAPORTE
United States Magistrate Judge

5